The Chancellor.
The controversy is between the mortgagees holding mortgages subsequent to the complainants’ mortgage, and the mechanics claiming liens, under the statutes *490 referred to in their answers, for work and labor and materials • found in and for the erection of the buildings.
■ The first section of the act provides, that all claims for such-work and materials shall be filed in the office of the clerk of the county within six months from the time the work is done or' the materials are furnished. • The second section provides, that in all cases of lien created by the act, the person having a claim filed as aforesaid may,' at his election, proceed to recover' it by personal action against the ■ debtor, or by scire facias against the debtor and owner or owners of the buildings; and when the proceeding- is by scire facias, if the defendant fail to appear, the court shall render judgment’as in other cases on writs of scire facias ; but if he appear, lie • may- plead and make defence, and the like proceedings be had as in personal' actions for the recovery of debts; and upon judgment being rendered thereupon, execution shall issue against the building and land on which the same is erected, subject to all prior claims as aforesaid, that is, in the language of the first section, - all prior claims on mortgage or judgment against the land owner on the land on which the building is erected and prior to the erection thereof. The act creates a lien for the materials found for and the work done in erecting the building, from the time • of the material found or the work done, if the claim is filed-Within six months from that time. There is another provision in the first section of the act, that no such demand shall remain ■ a lien-- longer than two years from the commencement of the building, -unless the claim be filed within six months after performing the work, or furnishing the materials, and an action-for the recovery of the same be instituted within one year after the work done or material found.
The extent of the lien* as to the subject of it, is shown by the mode pointed out, in the act, of enforcing it at law. It is-to be enforced at law by judgment for-the claim filed, and execution against the building and land on which the same is ■ erected. The lien, .therefore, is on the building and land on-which it is erected.
It was argued that proceeding by personal action against the debtor was a waiver of the lien. This cannot be so consistently with the provision that the demand shall remain a lien for • *491 two years if the claim be filed within six months-and an action for the recovery of the same be instituted within a year after the work done or materials found. The only consistent reading ■ of the section pointing out the mode of enforcing tho lien at Jaw is, that the person having a claim filed as aforesaid may, at his election, proceed to recover it-by personal, action against, the debtor, or by scire facias against the debtor and owner of the building; and on judgment being rendered oa the claim, in either mode of proceeding, execution shall issue against the building and land upon which the same is erected, subject only - to such prior claims as are mentioned in the first, section.
The claims of the mechanics, in this case,-were subsisting liens al the filing of the bill; nothing had or has been done or omitted to forfeit or bar them; and this court must give them effect according to the provisions of the act. If there should not be enough to pay them both, after paying the mortgage of -the complainants, they must bo paid raieably.
On what land arc the claims liens ? The act says, the building and the land on which it is erected. Is it only the land which the building covers ? or io it all of any distinct tract of land on which the building stands? It seems to me it must he. one or the oilier. If it be not confined to the land covered by the building, and this I think would be an absurdity, it must be the tract on which the building stands; for if this be not so, we must make tho equally absurd supposition that the legislature intended that the parties, or one of them, or the court, should determine what part of the tract should be subject to the. lien, that is, how much of a tract, besides the foundation, a house shall be held to stand upon.
How shall the property be sold ? If the whole of the land mortgaged to the complainants will not bring enough to pay them, it is unimportant to the subsequent incumbrancers how the property is sold. If it bring more than the first incumbrance, the building must be supposed to contribute to such surplus ; and such, surplus should go to pay for the building. The court, on general principles, might order the property sold together or in such parcels as it might direct, as should seem most advantageous for the incumbrancers. It seems to me that the court can act. on no other principles in this case ; and that no *492 .-advantage could result to the subsequent incumbrancers, or any .of them, in this case, from the adoption of any other principle or mode of sale. A. holds a mortgage on a tract of ten acres; R, a carpenter, builds a house on'it and acquires a lien, for the amount of his work, on the building and land on which it is erected; and C. takes a subsequent mortgage on the whole. I see no good reason why the whole should not be sold together, and the proceeds applied to the incumbrances according to then-priority.
True, a part of the land, not including the house, might bring enough to satisfy the first incumbrance. This would leave the residue of the land, including the house, for the carpenter and the subsequent mortgagee. If, in this state of things, ■the subsequent mortgagee could confine the carpenter to the house and the land it covered, the residue of the land would go to pay his mortgage; but it is plain this would sacrifice the carpenter’s interest, and it cannot be the' meaning of the act.
I think the -true construction of the act will appear by supposing -that no lien exists omthe whole traot, except the carpenter’s lien for the house built on it. In that case, what would be the extent of the carpenter’s lien on the land on which the house Avas built? I think it.would extend to so much of the land as, with the house, would pay the lien. If this be so, then, in the case put, after selling so -much of the land as would pay A:’s mortgage, the residue of land, Avith the house on it, might as well be sold together. If it brought no more than enough to pay the carpenter’s lien, the subsequent mortgagee could get .nothing; if it -brought more, he could have the surplus. It is also apparent from this that, in the case put, the •whole tract might as well -be sold together, and the surplus, after paying A.’s mortgage, be applied first to pay the carpenter, and the surplus 'beyond that, if any, to the subsequent mortgage.
■It was said in argument -that the carpenter would get a lien ,on the .entire tract of land, as security for a house he might build on it. I see no reason why he should not, in good sense and .under the language of the act, have a lien on so much of the land, including the house, as will pay for building the *493 house; and unless you can confine him to the ground covered by the house, there can bo no other rule.
In the case in hand, I am of opinion that the claims of Sclioonmaker and Morrell & Post are liens on the buildings and on the tract on which they were erected, or so much thereof as will be necessary to pay them; and that these liens are prior to the mortgages set up in the answers.
Order accordingly.